COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
| --- | --- | --- |
| LUIS GARCIA, AS THE ADMINISTRATOR OF THE ESTATE OF MELINDA O'BRIEN, | § | No. 08-09-00169-CV |
|  | § | Appeal from |
| Appellant, |  |  |
|  | § | 143rd District Court |
| v. |  |  |
|  | § | of Reeves County, Texas |
| HOME STATE COUNTY MUTUAL INSURANCE COMPANY, | § | (TC # 08-04-19066-CVR) |
|  | § |  |
| Appellee. | § |  |

**O P I N I O N**

Luis Garcia, Administrator of the Estate of Melinda O'Brien, appeals from a summary

judgment granted in favor of Home State County Mutual Insurance Company. For the reasons that

follow, we affirm.

**FACTUAL SUMMARY**

Melinda O'Brien was employed as a truck driver by Shirley and Elaine Bradberry d/b/a

Bradberry Trucking. Home State issued a business auto insurance policy to the Bradberrys. Under

the policy, O'Brien was an insured driver. The policy had a combined bodily injury/property damage

policy limit of $1,000,005 for each accident.

*The Accident*

On April 5, 2004, O'Brien was operating a tractor trailer carrying several passengers,[1] including Marcos Camacho Rosas. The truck crossed the center line and collided with a tractor-trailer driven by Robert Walters. O'Brien's vehicle overturned on the roadway. Some time later, a tractor-trailer operated by Norman Crawford for Candy Apple Trucking ran into the overturned tractor-trailer. O'Brien and Rosas were killed, along with other passengers in the O'Brien vehicle.

*The Federal Interpleader Action*

Home State filed an interpleader action in federal court and deposited $1,000,005 into the court's registry. The interpleader identified numerous defendants, including the wrongful death beneficiaries of Marcos Camacho Rosas (the Gonzalez claimants),[2] who were claimants to the policy proceeds. Scott Staha of the Herman & Herman law firm represented the Gonzalez claimants. Home State alleged that there were multiple and adverse claims to the policy proceeds and it anticipated distribution of the policy proceeds by settlement or judgment in the interpleader action. Consequently, it requested that it be discharged from the suit and relieved of and all claims made by the defendants to the policy proceeds. Additionally, Home State represented that it was tendering a defense to its insureds in several state and federal court actions but additional suits could be filed. Home State sought a declaration that it had no further obligation under the policy to defend or indemnify its insureds since the applicable policy limits had been exhausted. The federal district court granted summary judgment in favor of Home State and discharged it from further liability on

---

[1] Casual reference was made during oral argument that O'Brien was transporting illegal immigrants.

[2] The Gonzalez claimants are Hortencia Marvilla Gonzalez, the widow of Marcos Rosas, Aritze Camacho Marvilla, Jose Marcos Camacho Marvilla, Alberto Camacho Marvilla, and the Estate of Marcos Camacho Rosas.

any and all claims asserted by the defendants to the interpleaded funds. The court also declared that Home State had no further duty to indemnify or defend its insureds, the Bradberrys and Bradberry Trucking, for any claims, demands, losses, lawsuits, or other causes of action of any type or nature whatsoever arising under the insurance policy. On July 26, 2005, the federal court entered an agreed final judgment disbursing the policy proceeds to several claimants. Pursuant to the judgment, $178,000 was paid to the widow of Marcos Camacho Rosas.

*Creation of the O'Brien Estate by the Gonzalez Claimants*

On April 5, 2006, the Gonzalez claimants' attorney, Scott Staha, filed an application for appointment of a temporary administrator of the Estate of Melinda O'Brien. The applicant, Kzymyck Byerly, stated she was a member of the Herman & Herman firm which was representing the Gonzalez claimants in a wrongful death and survival action against the estate of Melinda O'Brien and she identified the Gonzalez claimants as creditors. The applicant acknowledged that the estate was established to allow the Gonzalez claimants to file their wrongful and death and survival claims against the estate prior to the expiration of the applicable statute of limitations. David Munson was appointed as independent administrator of the Estate. According to the inventory, appraisement, and list of claims filed by Munson, the Estate had a total value of $25 in personal effects.

*The State Court Action*

At some point, the Gonzalez claimants filed suit in Reeves County in cause number 06-04-18507-CVR against Norman Crawford, Carolyn A. Hood, individually and d/b/a Candy Apple Trucking, Shirley Bradberry, individually and d/b/a Bradberry Trucking, Elaine Bradberry, individually and d/b/a Bradberry Trucking, and David Munson as the Administrator of Melinda

O'Brien's Estate.[3]  The suit alleged that there were two accidents and both collisions proximately caused the death of Marcos Rosas.  Home State provided a defense to the Estate.  On May 7, 2007, the case was tried to a jury.  The jury found that the negligence of O'Brien and Bradberry Trucking proximately caused the death of Marcos Rosas but the negligence of Norman Crawford and Candy Apple Trucking did not.  The jury also determined that O'Brien was not acting in the course and scope of her employment at the time of the accident.  Based on the jury's findings, the trial court entered judgment that the Gonzalez claimants take nothing from Norman Crawford and Candy Apple Trucking, but awarded over $2 million in damages against the Estate.  Home State did not appeal.  The Gonzalez claimants demanded that Home State pay another $1 million under the insurance policy, but it refused.

*The Second Action in Federal Court*

On July 27, 2007, the Gonzalez claimants filed suit in federal district court seeking a declaratory judgment that  there were two accidents which proximately caused the death of Marcos Rosas, and therefore, two policy limits were payable under the policy.  Home State filed a motion for summary judgment asserting the claim was barred by res judicata and judicial estoppel because it was not raised in the interpleader action.  The federal district court granted the motion for summary judgment on the res judicata ground because it found that the Gonzalez claimants should have raised their claims regarding the number of accidents and the amount of coverage in the interpleader action.

*The State Court Action against Home State*

While the Gonzalez claimants' federal action was pending, Munson, acting on behalf of the

---

[3] It is unclear when this suit was filed as the record contains only the sixth amended petition filed on April 18, 2007.

-4-

Estate, filed suit against Home State in the instant case asserting a *Stowers* claim[4] and a bad faith/insurance code violation cause of action. Additionally, the Estate sought a declaratory judgment that because two separate accidents caused Rosas' death, Home State was obligated to pay another $1 million "per accident" policy limit. The trial court stayed the case until the federal court ruled on the issues. After the federal court ruled, the trial court lifted the stay and Home State moved for summary judgment on the grounds of res judicata based on the federal court judgments and collateral estoppel based on the state court judgment.

After receiving the summary judgment motion, Munson began the process of resigning as administrator and filed a motion to withdraw as counsel for the Estate. He also filed a motion to continue the hearing on Home State's summary judgment motion. In his affidavit supporting the continuance motion, Munson confirmed that he was appointed administrator of the Estate after being approached by Scott Staha of Herman & Herman. Munson also stated:

> I received Defendant's Motion for Summary Judgment on approximately January 6, 2009. I forwarded a copy of the Defendant's Motion for Summary Judgment to Scott T. Staha on or about January 19, 2009. The hearing on Defendant's Motion for Summary Judgment has been set for February 20, 2009 at 10:00 am. The response to the Defendant's Motion for Summary Judgment is due on February 13, 2009. On February 12, 2009, I was informed by Scott T. Staha's office that Scott Staha's clients' [sic] would like for a response to Defendant's Motion for Summary Judgment to be filed. I informed Scott Staha that the Estate does not have the means or cannot afford to file a response, because it is insolvent. I offered to resign as the

[4] The duty of an insurer to exercise ordinary care in the settlement of claims to protect its insureds against judgments in excess of policy limits is generically referred to in Texas as the Stowers duty. *American Physicians Insurance Exchange v. Garcia*, 876 S.W.2d 842, 843 n.2 (Tex. 1994); *Stowers Furniture Company v. American Indemnity Company*, 15 S.W.2d 544 (Tex.Comm'n App.1929, holding approved). The "Stowers Doctrine" permits an insured to maintain a cause of action against his insurer for the negligent failure of the insurer to settle a claim within applicable policy limits. *Stowers*, 15 S.W.2d at 547-48. The elements of a "Stowers Doctrine" claim are (1) the claim against the insured was within the scope of coverage, (2) there was a settlement demand within policy limits, and (3) the terms of the demand were such that an ordinary prudent insurer would have accepted, considering the likelihood and degree of the insured's potential exposure to an excess judgment. *American Physicians Insurance Exchange*, 876 S.W.2d at 849.

Administrator and allow his clients' [sic] to select and appoint a qualified successor representative. Scott T. Staha's clients agreed that I should resign and would prefer that I resign in favor of a successor representative who will more adequately, fully and completely respond to the Defendant's Motion for Summary Judgment.

The trial court granted Munson's motion to withdraw as counsel. Robert Hilliard, Kevin Grillo, and Jesse E. Guerra, Jr. of the law firm Hilliard Muñoz Guerra, L.L.P. substituted as counsel for the Estate and filed a response to the summary judgment motion. The probate court in Harris County signed an order appointing Luis P. Garcia as the successor administrator of the Estate. Garcia, acting on behalf of the Estate, filed an amended petition eleven days before the summary judgment hearing raising the same declaratory judgment, Stowers, and bad faith claims that had been raised by Munson.[5] Following a hearing, the trial court granted Home State's summary judgment motion without specifying the grounds and entered a judgment that the Estate take nothing.

## RES JUDICATA AND COLLATERAL ESTOPPEL

The Estate raises three issues challenges the summary judgment granted in favor of Home State on the grounds of res judicata and collateral estoppel.

### Standard of Review

The standard of review for traditional summary judgment under TEX.R.CIV.P. 166a(c) is well established. *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). The moving party carries the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005); *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005). Evidence favorable

---

[5] In the first amended petition, the Estate did not specifically request a declaration that two separate accidents had caused Rosas' death, but it sought a declaration that "the separate multiple collisions obligate defendant to provide and tender the policy limits for each separate accident."

to the non-movant will be taken as true in deciding whether there is a disputed issue of material fact. *Fort Worth Osteopathic Hospital, Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004). All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. *Id*. A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action or if it conclusively establishes all elements of an affirmative defense. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002); *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). Once the defendant establishes a right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678-79 (Tex. 1979); *Scown v. Neie*, 225 S.W.3d 303, 307 (Tex.App.--El Paso 2006, pet. denied).

*Abandonment of the Declaratory Judgment Action*

The Estate filed its first amended petition eleven days before the summary judgment hearing. The amended petition requested a declaration that there were two accidents and two policy limits, and it also asserted a Stowers claim, and a bad faith/Insurance Code violation claim. Home State contends that the Estate abandoned its declaratory judgment action at the summary judgment hearing. This argument implicates Rules 63, 165, and 166a(c) of the Texas Rules of Civil Procedure. If Home State is correct, this would significantly alter the summary judgment analysis.

In arguing that the Estate abandoned its declaratory judgment action, Home State points to three occasions during the hearing where the Estate's counsel made representations to the trial court about the declaratory judgment claim. After the summary judgment hearing began, Grillo interrupted opposing counsel's argument to state: "Judge, to shorten the time, I want to make it clear that although we had some pleadings that alleged there were two accidents, I think the only real issue

before the Court is whether the O'Brien estate as represented by the administrator is entitled to indemnity from Home Insurance for the first accident, regardless of whether the second accident occurred. That way we don't have to try to relitigate that issue because I think it was addressed, and the only issue is whether she's entitled to indemnity under the policy, regardless of whether there was a second accident. So to shorten the time, *I will represent to the court that we're not going to ask the court to determine that there was a liability under a second accident*." Later in the hearing, counsel for Home State asked Grillo to clarify whether the Estate was requesting a declaration that there were two separate accidents and two separate policy limits. He replied: "I want to represent to the court *we are abandoning that position*. We are not going to take the position on two separate accidents." Grillo proceeded to address the merits of Home State's summary judgment motion while emphasizing that the Estate was not a party to the prior federal suits. Then, near the conclusion of the hearing, Grillo appeared to retreat from outright abandonment of the claim. Counsel for Home State asked him to clarify whether the Estate was abandoning its claim that the policy has two limits. The trial judge interrupted and indicated he understood the Estate's position to be only that there was not a second accident. The following exchange then occurred:

> [Mr. Grillo for the Estate]: I'm claiming there's not -- I want to make it clear that the issue is going to simply be did the first judgment -- did the judgment by Judge Junell, saying that Home Indemnity, I mean, Home doesn't have any indemnity issue towards Bradberry, does that bind the estate from making a claim. That's it.
>
> [The Court]: No, that isn't what you said earlier. I'm going to hold you to what you said earlier.
>
> [Mr. Grillo]: And I am trying to do that, Judge, I'm trying to say we are not making -- we're saying the estate is not suing the -- *we're not going to continue that claim that there was a second accident and we should get more limits*. I want to make it clear that we're just focusing on the existing policy and saying because we weren't included in the existing policy issue when it was in the interpleader, we're not barred

by that finding. So -- and I was trying to make it clear. I don't mean to change my position. What I said is whatever I said. But that was the purpose of saying it. I don't want to confuse the issue. I don't want to relitigate the issue of whether there was a second accident. I think it's all one claim, so that's what I'm trying to clarify.

Rule 165 provides that "[A] party who abandons any part of his claim or defense, as contained in the pleadings, may have that fact entered of record, so as to show that the matters therein were not tried." TEX.R.CIV.P. 165. Formal amendment of the pleadings is not required in order to show abandonment. *In the Interest of Shaw*, 966 S.W.2d 174, 177 (Tex.App.--El Paso 1998, no pet.). We have previously found that statements made in open court by counsel for a party can constitute abandonment of a claim under Rule 165. *Shaw*, 966 S.W.2d at 176-77 (statements by counsel for the Texas Department of Protective and Regulatory Services that it was not pursuing termination of parental rights of a putative father constituted abandonment under Rule 165).

There is certainly evidence from which it can be concluded that the Estate intended to abandon its request for a declaration that the separate multiple collisions obligated Home State to provide and tender the policy limits for each separate accident. But this case is distinguishable from *Shaw* because the abandonment in that case took place during a bench trial whereas the purported abandonment in this case occurred during the summary judgment hearing. Rule 166a(c) expressly provides that the trial court should render summary judgment based on "the pleadings . . . *on file* at the time of the hearing, or filed thereafter and before judgment with permission of the court . . . ." [Emphasis added]. TEX.R.CIV.P. 166(a)(c).[6] At the time of the summary judgment hearing, the live

_____

[6] Rule 166a(c) provides, in part, that: "The judgment sought shall be rendered forthwith if (i) the deposition transcripts, interrogatory answers, and other discovery responses referenced or set forth in the motion or response, and (ii) *the pleadings*, admissions, affidavits, stipulations of the parties, and authenticated or certified public records, if any, *on file at the time of the hearing, or filed thereafter and before judgment with permission of the court*, show that, except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response." [Emphasis added]. TEX.R.CIV.P. 166a(c).

pleading on file was the Estate's first amended petition filed eleven days earlier. The Estate did not file an amended petition reflecting its abandonment of the declaratory judgment action after the summary judgment hearing. We recognize that formal amendment is not required by Rule 165 to show abandonment, but Rule 166a(c) restricts the trial court to reviewing only those pleadings *on file* at the time of the summary judgment hearing or those filed with the court's permission after the summary judgment hearing and before judgment. Consequently, our review of the summary judgment must be viewed in light of the Estate's first amended petition which includes the request for a declaratory judgment.

*Claim Preclusion*

In Issues One and Three, the Estate contends that its suit is not barred by the doctrine of claim preclusion or res judicata. The parties agree that federal law determines the preclusive effect of a federal court judgment in state court. *Geary v. Texas Commerce Bank*, 967 S.W.2d 836, 837 (Tex. 1998); *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 718 (Tex. 1990). Under federal law, the preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as "res judicata." *Taylor v. Sturgell*, 553 U.S. 880, 128 S.Ct. 2161, 2171, 171 L.Ed.2d 155 (2008); *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009). The purpose of these doctrines is to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and encourage reliance on adjudication by preventing inconsistent decisions. *Allen*, 449 U.S. at 94, 101 S.Ct. at 415.

Under the doctrine of claim preclusion, a final judgment on the merits of an action precludes

the parties or their privies from relitigating issues that were or could have been raised in that action. *Allen*, 449 U.S. at 94, 101 S.Ct. at 415; *Oreck Direct*, 560 F.3d at 401. Four elements must be met for a claim to be barred by res judicata: (1) the parties in the two actions must be identical; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same claim or cause of action must be involved in both cases. *Oreck Direct*, 560 F.3d at 401; *In re Ark-La-Tex Timber Co.*, 482 F.3d 319, 330 (5th Cir. 2007). The only element in dispute here is the identity requirement.

As a general rule, a party is not bound by a judgment in personam in litigation in which he was not designated as a party or to which he has not been made a party by service of process. *Taylor*, 128 S.Ct. at 2171. But the Supreme Court noted in *Taylor* that the general rule is subject to six categories of exceptions. *Id.*, 128 S.Ct. at 2172. A court may apply nonparty preclusion where: (1) the nonparty agreed to be bound by the litigation of others; (2) a substantive legal relationship exists between the person to be bound and a party to the judgment; (3) the nonparty was adequately represented by someone who was a party to the suit; (4) the nonparty assumed control over the litigation in which the judgment was issued; (5) a party bound by a judgment is attempting to relitigate issues through a proxy; or (6) a statutory scheme foreclosed successive litigation by nonlitigants if the scheme is otherwise consistent with due process. *See id.* at 2172-73. If any of these exceptions applies, due process is not offended, and the identity element necessary for preclusion is satisfied. *See id.*, 128 S.Ct. at 2172-73.

Home State relied on the proxy exception to satisfy the identity requirement. The Supreme Court has explained that preclusion is in order when a person who did not participate in litigation later brings suit as the designated representative of a person who was a party to the prior

adjudication. *Id.*, *citing Chicago, R.I. & P.R. Co. v. Schendel*, 270 U.S. 611, 620, 623, 46 S.Ct. 420, 70 L.Ed. 757 (1926). Preclusion is also appropriate when a nonparty later brings suit as an agent for a party who is bound by a judgment. *Taylor*, 128 S.Ct. at 2173. Utilizing agency principles, the court stated that preclusion is appropriate only if the putative agent's conduct of the suit is subject to the control of the party who is bound by the prior adjudication. *Id.* at 2179 and n.13.

The summary judgment evidence established that the Gonzalez claimants, who were represented by Scott Staha of the Herman & Herman law firm, were parties in the interpleader action and agreed to accept $178,000 as their share of the interpleaded $1,000,005 policy limits. The Gonzalez claimants do not dispute that they created the Estate of Melinda O'Brien in order to sue the Estate before the statute of limitations expired. The Gonzalez claimants filed suit against Home State in federal court claiming there were two accidents which caused Rosas' death, and therefore, there were two policy limits. Again, Mr. Staha represented the Gonzalez claimants. The federal court ruled against the Gonzalez claimants and they did not appeal. The Estate of O'Brien filed suit in the instant case making the same claims as presented by the Gonzalez claimants in the second federal suit, namely, there were two accidents and two policy limits.

The original administrator of the Estate, David Munson, filed an affidavit in connection with his motion to continue the hearing on Home State's motion for summary judgment. Munson averred that he had been approached by Staha to serve as administrator of the Estate and he was subsequently appointed as administrator. Munson forwarded a copy of Home State's motion for summary judgment to Staha who informed him that the Gonzalez claimants wanted Munson to file a response to the motion. After informing Staha that the Estate could not afford to file a response because it was insolvent, Munson offered to resign as the administrator to allow the Gonzalez claimants to

select and appoint a qualified successor representative. Munson averred that Staha's clients agreed that he should resign in favor of someone who would file a response to the motion for summary judgment. This evidence establishes that the Gonzalez claimants controlled who would serve as administrator as well as the tactics to be employed by the Estate. Home State conclusively established that the administrator's conduct of the suit was subject to the control of the Gonzalez claimants who were bound by both of the prior federal court judgments. Issues One and Three are overruled. Because we have determined that the trial court properly granted summary judgment in favor of Home State on the ground of claim preclusion it is therefore unnecessary to address Issue Two. The summary judgment is affirmed.


September 22, 2010

ANN CRAWFORD McCLURE, Justice

Before McClure, J., Rivera, J., and Barajas, C.J. (Ret.)
Barajas, C.J. (Ret.), sitting by assignment